UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAMILLE PATTERSON,<br><br>                Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Case # 1:18-cv-698-DB<br><br>MEMORANDUM DECISION<br>AND ORDER |

## INTRODUCTION

Plaintiff Camille Patterson ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 11. Plaintiff also filed a reply. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion (ECF No. 8) is **DENIED**, and the Commissioner's motion (ECF No. 11) is **GRANTED**.

## BACKGROUND

On August 20, 2015, Plaintiff protectively filed her DIB application, alleging a disability beginning September 10, 2011 (the disability onset date), based on: impairments of the cervical, thoracic, and lumbar spine with disc herniations and spondylitic changes; chronic cervicogenic headaches; post-concussion syndrome; anxiety disorder, and fibromyalgia. Transcript ((Tr.) 67. Plaintiff's alleged impairments relate back to injuries she suffered in a September 10, 2011

automobile accident. Tr. 42. However, the record reflects that Plaintiff had stopped working in 2006, before becoming injured, to raise her daughter. Tr. 37-38. Plaintiff's claim was initially denied on December 8, 2015, after which she requested an administrative hearing. Plaintiff's hearing was held on October 3, 2017. Administrative Law Judge Brian Battles (the "ALJ") presided over the hearing via video from Alexandria, Virginia. Tr. 11. Plaintiff appeared and testified from Buffalo, New York, and was represented by Sarah A. Frederick, an attorney. Tr. 11. Kathy Votau, an impartial vocational expert ("VE"), appeared telephonically at the hearing. *Id.*

The ALJ issued an unfavorable decision on October 31, 2017, finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. Tr. 11-20. On April 20, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-3. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his October 31, 2017 decision:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2012;

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 10, 2011 through her date last insured of December 31, 2012 (20 CFR 404.1571 *et seq.*);

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine and disc herniations (20 CFR 404.1520(c));

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. Through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) [1] except that the claimant can occasionally balance, stoop, kneel, crouch, and crawl; occasionally climb ramps or stairs; and never climb ladders, ropes, or scaffolds; and frequently but not constantly use their(sic) bilateral upper extremities for reaching;

6. Through the date last insured, the claimant was capable of performing past relevant work as a teacher. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565);

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 10, 2011, the alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(1)).

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Tr. at 11-18.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on August 20, 2015, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. *Id.* at 18.

## **ANALYSIS**

Plaintiff asserts four points of error. Plaintiff's first two arguments take issue with the ALJ's weighing of the medical opinions of Frank Laurri, M.D. ("Dr. Laurri"), Plaintiff's primary care physician, and Daniel Salcedo, M.D. ("Dr. Salcedo"), who conducted an independent medical examination ("IME"). *See* ECF No. 8-1 at 21-28. Plaintiff's third point of error contends that the ALJ's failure to properly credit the above-referenced opinions "resulted in a significant gap in the record," and thus, his RFC determination was not supported by substantial evidence. *Id.* Finally, Plaintiff argues the ALJ did not establish that Plaintiff had the qualifications to perform her past relevant work as a teacher. *Id.* at 28-30. The Commissioner responds that the evidence in the record as a whole supports the ALJ's decisions, and Plaintiff failed to meet her burden to establish that she could not perform her past relevant work. *See* ECF No. 11-1 at 15-26.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

I. **The ALJ Properly Considered and Weighed The Medical Evidence.**

　A. <u>**Dr. Salcedo**</u>

Plaintiff argues that the ALJ failed to mention Dr. Salcedo's IME or his medical source statement. *See* ECF No. 8-1 at 21. Plaintiff argues that even though Dr. Salcedo examined Plaintiff after her date last insured, the ALJ should have considered the opinion because it related to the time period from Plaintiff's automobile accident and her alleged onset of disability, and further, Dr. Salcedo reviewed medical records from before Plaintiff's December 31, 2012 date last insured. *See id*. at 21-22.

On November 19, 2013, almost a year after Plaintiff's date last insured of December 31, 2012, Dr. Salcedo examined Plaintiff and reviewed her medical records prior to assessing functional restrictions and detailed treatment recommendations. Tr. 446-52. Dr. Salcedo opined that Plaintiff had been "impaired" since September 10, 2011, the date of her automobile accident, through the date of his examination. Tr. 450. Dr. Salcedo further opined that at the time of his examination, Plaintiff was "unable to return to her pre-loss activity levels including occupation duties due to residual pain and limited range of motion." Tr. 450. Dr. Salcedo then stated the following restrictions: "avoiding prolonged activities such as sitting, standing, or walking > 30 min to an hour without breaks for stretching 5 to 10 minutes." Tr. 450. Dr. Salcedo also stated that Plaintiff should not lift more than 20 to 25 pounds, and she should not engage in extensive range of motion for her cervical and lumbar regions unless in physical therapy or massage. Tr. 450. Notably, he also opined that Plaintiff could stabilize her condition within six months if she followed a "better structured rehabilitation regimen." Tr. 451. According to Dr. Salcedo, Plaintiff's past physical therapy treatment was not as effective as it could have been because she "may have failed to continue with independent exercise programs." Tr. 451.

The Commissioner argues that it was unnecessary for the ALJ to specifically address or weigh Dr. Salcedo's opinion because it "does not shed any light on her condition as of the relevant time period." ECF No. 11-1 at 17. As a general rule, medical opinions given after the date that the claimant's insured status expired are only taken into consideration if such opinions are relevant to Plaintiff's condition prior to that date. *See Flanigan v. Colvin*, 21 F. Supp. 3d 285, 303 (S.D.N.Y. 2014). Moreover, this proposition is tempered by the fact that absent some gap in the record, an ALJ is generally only required to consider evidence dating one year before an application is filed. *See Tyran v. Comm'r of Soc. Sec.*, No. 16-CV-1012S, 2018 WL 3628252, at *4 (W.D.N.Y. July 31, 2018) (citing 20 C.F.R. § 404.1512(d) (complete medical history includes the 12 months preceding the month in which application is filed)); s*ee also McManus v. Comm'r of Soc. Sec.*, 298 F. App'x 60, 61 (2d Cir. 2008) ("no error in the ALJ's decision to exclude additional evidence proffered by plaintiff" where the "evidence pre-dated the time period the ALJ was required to consider under 20 C.F.R. §404.1512(d)"). The ALJ is under no obligation to consider evidence from a time period before the relevant period. The relevant time period is defined as the date the application was filed to the date of the ALJ's decision. *See Williams v. Colvin*, 98 F. Supp. 3d 614, 631-632 (W.D.N.Y. 2015).

Based on the foregoing, it was unnecessary for the ALJ to specifically address or weigh Dr. Salcedo's opinion, and the Court finds no error in the ALJ's decision to not discuss evidence that pre-dated the time period the ALJ was required to consider under 20 C.F.R. § 404.1512(d)"). *See Shook v. Comm'r of Soc. Sec.*, No. 12-185, 2013 WL 1213123, at *6 (N.D.N.Y. Jan. 25, 2013); *Gemmell v. Comm'r of Soc. Sec.*, No. 16-1014, 2017 WL 3328237, at *5 (N.D.N.Y. Aug. 2, 2017). While medical opinions that predate the alleged onset date may be relevant where there is "scant evidence from the disability period," *see, e.g., Binder v. Comm'r of Soc. Sec.*, No. 5:15-CV-738

(NAM), 2016 WL 4079533, at *4 (N.D.N.Y. July 29, 2016) (collecting cases), that is not the case here. The medical evidence and other evidence in the record from the relevant time period provides substantial evidence in support of the ALJ's decision. When the record is complete, the ALJ is under no obligation to look outside the relevant period for additional evidence *See James v. Berryhill*, No. 17-CV-60S, 2018 WL 3153398, at *3 (W.D.N.Y. June 27, 2018).

On November 20, 2012, Plaintiff saw neurosurgeon Michael Stoffman, M.D. ("Dr. Stoffman") for a neurosurgical re-evaluation. Tr. 233-34. One week priorm at her initial evaluation, it was noted that massage therapy and physical therapy significantly alleviated her symptoms. Tr. 230. Two weeks later the opposite is noted; however, the examination also noted that Plaintiff was in no acute distress. Tr. 233. There was no paraspinal muscle tenderness; 5/5 power throughout; negative straight leg raising; normal range of motion of the lumbar spine; and normal gait and station. *Id*. MRIs of the thoracic, cervical, and lumbar spine demonstrate no significant herniation. Tr. 233-234. In November 2011 Plaintiff's head CT scans were negative. Tr. 315. She had full range of motion in all directions. Tr. 316. Her studies were labelled negative, and her tandem gait was perfectly normal. Tr. 320. An IME by Gordon Steinagle, D.O. ("Dr. Steinagle") approximately five months after the accident noted Plaintiff's condition was expected to stabilize within six months. Tr. 312. The ALJ also thoroughly discussed subsequent radiological studies which demonstrated small herniations. Tr. 15. However, the ALJ noted that during the same time period Plaintiff had full range of motion of her neck with some pain on movement. Tr. 15.

Based on the foregoing, the ALJ was not required to discuss Dr. Salcedo's one-time consultation. Although there is a duty to fully develop the record, the ALJ is not required to discuss all the evidence submitted. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67,79 (N.D.N.Y.

2005). It is clear to the Court, based on the list of exhibits attached to the ALJ's decision, this particular record was before the ALJ. *See* Tr. 21. However, as explained above, the ALJ was not required to consider it.

### B. Dr. Laurri

Plaintiff next argues that the ALJ improperly gave partial weight Dr. Laurri's medical source statement form. *See* ECF 8-1 at 22; Tr. 16, 467. As noted above, Dr. Laurri was Plaintiff's primary care physician. The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each

factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

First, Dr. Laurri's opinion was dated December 3, 2015, almost three years after Plaintiff's date last insured, and it stated that it covered the time period from "9-10-11 to present." Tr. 467. In addition, like Dr. Salcedo's opinion, Dr. Laurri's functional capacity assessment form did not address Plaintiff's functional limitations as to the specific relevant time period, instead including several years after her date last insured. *See Claymore v. Astrue*, 519 F. App'x 36, 38 (2d Cir. 2013) (finding ALJ did not err in giving diminished weight to treating physicians who were outside of the treatment period).

Second, the ALJ gave sufficiently good reasons for giving less weight to Dr. Laurri's December 2015 statement. *See Snell*, 177 F.3d at 133 (stating the ALJ must give good reasons for giving less weight to a determination by a treating physician). As noted by the ALJ, Dr. Laurri's treatment notes do not support the extreme limitations contained in the December 2015 functional capacity assessment during the relevant time period. For example, while Dr. Laurri opined in December 2015 that Plaintiff could stand and walk less than two hours a day, and sit less than six hours per day, his treatment notes during the relevant time period did not include any mention of such limitations, instead indicating during the September 2012 physical that Plaintiff had full range of motion in her neck and she exhibited full strength. Tr. 536, 542. Dr. Laurri observed that Plaintiff's neck and musculoskeletal system were normal. Tr. 538. In October 2012, Dr. Laurri stated that despite some complaints of pain, Plaintiff's neck had full range of motion, she had full strength, and her sensation was intact. Tr. 536. Even in May and July 2013, just after the date last insured, Dr. Laurri and his nurse practitioner observed that Plaintiff's neck was normal, her upper and lower extremities were normal, and she walked with a normal gait. Tr. 533, 534. The ALJ may

properly discount a treating physician opinion that is inconsistent with contemporaneous treatment notes and which do not include any reference to physical limitations. *See Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009); *see also Dumas v. Schweiker*, 712 F.2d 155, 1553 (2d Cir. 1983) ("The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say."); *Gill v. Astrue*, No. 10-985, 2011 WL 4352410, at *12 (N.D.N.Y. Sept. 15, 2011) (explaining that ALJ correctly did not assign weight to treating physician opinion that was dated over two years after date last insured and was not consistent with treatment notes from relevant time period).

Although the ALJ gave only partial weight to Dr. Laurri's opinion, he explained that most of the other medical evidence, including Plaintiff's activities of daily living during the relevant time period and her conservative treatment, did not support the extreme limitations contained in Dr. Laurri's functional capacity assessment form. Tr. 16, 467. Furthermore, the ALJ did credit the portion of Dr. Laurri's opinion regarding Plaintiff's ability to lift and carry 10 pounds frequently. This was based on Plaintiff having some neck pain and limited range of motion, as well as an inability to lift or carry her daughter during the relevant time period. Tr. 16, 309, 310, 315, 316, 320.

With respect to Plaintiff's activities of daily living, the ALJ noted that Plaintiff lived in a two-story house with all the bedrooms on the second floor. Tr. 33. Plaintiff also attended her daughter's dance competitions. Tr. 50. On February 16, 2012, Dr. Steinagle conducted an IME to determine whether Plaintiff needed physical therapy. Tr. 307-09. Plaintiff stated she could wash, feed, and use the toilet herself, but she did not vacuum, lift overhead, lift or carry her daughter, peel or stir food, or carry laundry. Tr. 309. She could drive a car and walk stairs and distances in moderation, and she was doing clerical work for her husband's computer business. *Id.*

Accordingly, the ALJ properly discounted Dr. Laurri's opinion based on these admitted activities of daily living, in combination with the other medical evidence in the record. *See Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012) (finding that the ALJ properly discounted an opinion that "conflicted with [the claimant's] own testimony that he could perform a reasonably broad range of light, non-stressful activities at or near his home, including driving, reading, sending email, and independently performing the activities of daily living while his wife worked full-time.").

The ALJ also found Plaintiff's allegations about the severity of her impairments not entirely consistent with the record. Tr. 14-17. *See Hargrave v. Colvin*, No. 12-6308, 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (explaining ALJ's "decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence"); 20 C.F.R. §§ 404.1529 & 416.929; SSR 16-3p. It is the function of the Commissioner, rather than the courts, to appraise the credibility of claimants. *See Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). As part of this analysis, the ALJ is "not require[d] to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). In this case, the ALJ noted that although Plaintiff's condition deteriorated over time, her testimony that she was in pain and agony and received constant care from doctors during the period at issue is not supported by the medical records. Tr. 14-17. In fact, other than massage therapy, she rarely sought medical treatment during the period in question. As the ALJ explained, the record supports that Plaintiff had some limitations in her exertional abilities, but not to the extent that she alleged, and such limitations were accounted for in the ALJ's RFC finding.

Also, in addition to the evidence discussed above, Plaintiff acknowledged that conservative treatment—including medication, physical therapy, and massage therapy—helped improve her

pain. Tr. 196, 230, 311, 446, 534, 542, 565, 566, 572. The ALJ may consider that a claimant's medical condition improved with treatment. *See Johnson*, 669 F. App'x at 46; *Shaffer v. Colvin*, No. 14-745, 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015) (explaining ALJ properly considered "that plaintiff's treatment for her condition was essentially routine and conservative, consisting of medication management and physical therapy"). And while Plaintiff testified that she was experiencing pain levels between 8 and 10, she also stated at the hearing that she was taking only ibuprofen. Tr. 43, 46. "The fact that a [claimant] takes only over-the-counter medicine to alleviate her pain may, however, help to support the Commissioner's conclusion that the claimant is not disabled . . . ." *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).

Thus, based on the evidence in the record as a whole, the ALJ properly assigned only partial weight to Dr. Laurri's December 2015 functional capacity assessment. *See Gray v. Colvin*, No. 13-00955, 2015 WL 5005755, at *5 (W.D.N.Y. Aug. 20, 2015) ("The ALJ was within his discretion to accept certain portions of [the treating physician]'s opinion, but reject those that were not supported by her own treatment notes or other substantial record evidence."); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (holding that it is within ALJ's discretion to sort through and resolve conflicts in evidence).

## II. The ALJ's RFC Was Supported by Substantial Evidence.

Plaintiff alleges that the ALJ rejected all of the medical opinion evidence creating a gap in the record. *See* ECF No. 8-1 at 25. First, this is not true, because, as noted above, the ALJ assigned partial weight to Dr. Laurri's functional capacity assessment. Tr. 16, 467. In addition, there were notes from physiatrist Jafar Siddiqui, M.D. ("Dr. Siddiqui") (Tr. 236-39), and neurologist Michael Meyer, M.D. ("Dr. Meyer") (Tr. 315-17), as well as from neurosurgeon Dr. Stoffman (Tr. 230-34) and Dr. Steinagle (Tr. 307-13), as referenced above. There were also medical opinions in the

record from Dr. Salcedo (as discussed above) and Robert Karpman, M.D., M.B.A. ("Dr. Karpman"), both of which were issued outside the relevant time period.[2] Tr. 16-17. Plaintiff contends that by discounting the latter opinions, the ALJ must have improperly relied on his own lay opinion to fill gaps in the record. *See* ECF No. 8-1 at 25-26. However, the record before the Court reflects that the ALJ properly took into account the medical evidence in the record on the whole and incorporated into Plaintiff's RFC those impairments and restrictions supported by the record as a whole. *See Johnson*, 669 F. App'x at 46 (explaining that "because the record contained sufficient other evidence supporting the ALJ's determination and because the ALJ weighed all of that evidence when making his residual functional capacity finding, there was no 'gap' in the record and the ALJ did not rely on his own 'lay opinion'").

On October 5, 2011, Dr. Meyer conducted a neurological evaluation of Plaintiff. Tr. 315-316. He observed that Plaintiff's visual fields were full, her pupillary light reflects were intact, and a fundoscopic exam was negative for any papilledema. Tr. 316. Dr. Meyer explained Plaintiff's motor and sensory exam of both upper and lower extremities was normal, and she had full range of motion in all directions, despite having some discomfort at extreme ranges *Id*. Plaintiff's gait and deep tendon reflexes were normal. *Id*. Dr. Meyer stated that Plaintiff had post-traumatic headaches with an element of post traumatic neck pain that should improve over time; CT examination of Plaintiff's head was normal and reassuring, and he recommended conservative treatment. Tr. 315, 319. On October 12, 2011, Dr. Meyer observed Plaintiff's visual fields were full, her upper and lower extremities were normal, her deep tendon reflexes were normal, her gait was unremarkable, her tandem gait was normal, and Romberg test was negative. Tr. 320. Plaintiff's neck had full range of motion, although at extreme ranges she felt some pulling and tightening. *Id*.

---

[2] Dr. Karpman saw Plaintiff for an IME and reviewed her medical records on March 13, 2015.

A November 2, 2011 MRI of Plaintiff's cervical spine showed that the paravertebral soft tissues were normal, and there was no fracture or dislocation. Tr. 329. There was some disc herniation at C3-C4, C5-C6, and C6-C7, but there was no impingement of the cervical cord. Tr. 329. Concentric disc bulging was seen at C4-C5, but the cervical cord was normal. Tr. 329. An MRI of the thoracic spine demonstrated disc bulging at T10-T11, but no herniation, spinal stenosis, or thoracic cord compression. Tr. 330. The paravertebral soft tissues were normal, and there was no fracture or dislocation. *Id*.

Between November 23, 2011, and January 23, 2012, Plaintiff attended physical therapy sessions at Mount St. Mary's Hospital and Health Center. Tr. 565-574. During the course of these sessions, Plaintiff generally rated her pain level between 3 and 6 out of 10. Tr. 565-569, 573-574. Plaintiff explained traction therapy and physical therapy provided some relief (Tr. 565, 566, 572), and her therapist observed that Plaintiff was progressing as a result of her therapy (Tr. 567, 569, 573, 574). Plaintiff attended massage therapy from February 13, 2012 through December 31, 2012. Tr. 370-405. Again, Plaintiff generally agreed that massage therapy improved her headaches and neck pain. Tr. 370, 371, 374, 377, 380, 382, 396. Her neck and shoulder pain appeared to be caused mostly by her headaches. Tr. 373-375, 377.

During Dr. Steinagle's February 2012 IME, Plaintiff stated she had pain in the base of her neck into her shoulders, and that she was limited in reaching, pulling, and lifting. Tr. 308. She had daily headaches orbitally and at the base of the neck, although these were partially relieved with massage therapy. Tr. 308. Plaintiff was apparently not taking medications at the time. *Id*. As discussed above, Plaintiff stated she was able to do self-care, drive a car, walk stairs and distances in moderation, and she was also doing clerical work for her husband's computer business. Tr. 309. Dr. Steinagle observed that Plaintiff's pulses were intact in all four extremities; her cervical spine

15

range of motion was reduced 50 percent in all three planes; her cervical and trapezius muscles had spasms; and her straight leg raise was negative Tr. 310. Dr. Steinagle explained that the September 10, 2011 cervical spine x-ray was generally unremarkable, and that a November 2011 MRI of the cervical spine showed only small disc herniations at C3-C4, C5-C6, and C6-C7, with a small disc bulge at C4-C5. Tr. 310. Dr. Steinagle stated that while Plaintiff was not currently receiving physical therapy, the massage therapy was successful in relieving her neck pain. Tr. 311. He opined that while she needed massage therapy for the next two months, she did not need physical therapy, and he expected Plaintiff's condition to stabilize within six months. Tr. 311-12.

On November 6, 2012 and November 20, 2012, Plaintiff was examined by Dr. Stoffman for a neurosurgical consultation. Tr. 230, 233. Plaintiff complained of pain in her neck, mid back, and low back, and she claimed she had difficulty standing, lifting, and walking. Tr. 230. Plaintiff again agreed that massage therapy and physical therapy helped significantly alleviate her symptoms. Tr. 230. Dr. Stoffman observed that Plaintiff was in no acute distress; her cervical flexion was normal; extension was reduced by 50 percent; and lateral rotation was reduced by 25 percent. Tr. 231. She did not have paraspinal muscle tenderness; she had full strength throughout; her sensory examination was normal; and her straight leg raise was normal. *Id*. Plaintiff's spine had no deformity and was nontender to palpation; her lumbar spine had a normal range of motion with normal bulk and tone and no muscle spasm; and she had a normal gait and station. *Id*. Dr. Stoffman explained that because Plaintiff's cervical and lumbar spine MRIs did not demonstrate any significant herniation, he did not believe she would benefit from surgical intervention. Tr. 230. He also opined that her symptoms were mainly muscle pain in origin. Tr. 231. When Plaintiff followed up with Dr. Stoffman on November 20, 2012, the physical examination results were essentially the same as her prior examination. Tr. 233. Dr. Stoffman reviewed a November 15,

16

2012 MRI of Plaintiff's thoracic spine, explaining it was unremarkable and there were no significant disc herniations, although there was a mild disc bulge at T10-T11. Tr. 233, 318. The spinal cord was normal. *Id*. His independent evaluation of the cervical and lumbar MRIs concluded again no significant herniations. Tr. 233-34

The treatment notes of Dr. Laurri, the neurological evaluations by Dr. Meyer, the physical therapy notes, Dr. Steinagle's IME, the message therapy notes, and Dr. Stoffman's neurosurgical consultation notes—along with the MRIs, x-rays, and Plaintiff's recount of her daily activities—provided enough substantial medical evidence as a whole to support the ALJ's RFC for the relevant time period. Tr. 230-231, 233, 307-312, 315-316, 320, 370-405, 536, 542, 525, 565-574. *See Johnson*, 669 F. App'x at 46 ("Taken together, [plaintiff's] testimony and [the doctor's] letter constitute 'relevant evidence [that] a reasonable mind might accept as adequate to support' the conclusion that [plaintiff] could perform 'light work.'"); *Kinsey v. Berryhill*, No. 15-00604, 2018 WL 746981, at *4 (W.D.N.Y. Feb. 6, 2018) (explaining that when "treating physician does not provide a specific function-by-function assessment," but "the record is extensive enough to support an informed residual functional capacity finding by the ALJ, remand is not appropriate"). Thus, the record on the whole was sufficient to allow the ALJ to properly formulate the RFC. *See Kinsey*, 2018 WL 746981, at *4.

Ultimately, while the RFC "'may not perfectly correspond with any of the opinions of medical sources in [the ALJ's] decision, [the ALJ] was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.'" *Dougherty-Noteboom v. Berryhill*, No. 17-00243, 2018 WL 3866671, at *9 (W.D.N.Y. Aug. 15, 2018) (quoting *Matta*, 508 F. App'x at 56). Here, the ALJ properly weighed all the evidence available and formed Plaintiff's RFC consistent with the record as a whole.

17

## III. The ALJ Properly Determined Plaintiff's Past Relevant Work.

In her last point of error, Plaintiff contends that the ALJ did not establish she had the experience necessary to learn the skills of an elementary school teacher. *See* ECF No. 8-1 at 27. As explained above, the ALJ properly found that Plaintiff retained the RFC to perform a range of light work with the noted exceptions. Tr. 14, 60, 61. The ALJ's RFC finding thus accounts for all of the work-related restrictions that are supported by and consistent with the evidence on the record as a whole. *See Parker-Grosse v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012). Having formulated the RFC, the vocational expert testified that, based on a hypothetical question that mirrored the ALJ's RFC finding, Plaintiff could perform her past relevant work as an elementary teacher (DOT 092.227-010), a skilled, light job, both as generally and actually performed. Tr. 17, 60, 61. Because the ALJ's RFC assessment is supported by substantial evidence, the ALJ's hypothetical was proper. *See Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).

Plaintiff argues the ALJ erred because he did not establish that she had at least four years of experience as a teacher to qualify as an SVP 7 under the Dictionary of Occupational Titles ("DOT"). *Id.* at 27-28. Plaintiff is incorrect. Although the DOT states that SVP 7 includes over two years of experience, and up to and including four years of experience, there is no presumption that Plaintiff *must* have worked the maximum amount of time to qualify for the SVP level. *See* DOT (app'x C), 1991 WL 688702; *see also Krull v. Colvin*, 669 F. App'x 31-32 (2d Cir. 2016) (finding that the plaintiff's past relevant work was an SVP 4, and the fact that the typical worker needed three to six months to learn the job did not constitute a six-month minimum; therefore, the "ALJ did not err by concluding that she did the work long enough to have learned how to perform [the job].").

18

In this case, the evidence in the record as a whole establishes that Plaintiff worked well beyond the minimum two years under SVP 7. First, Plaintiff stated in her disability application that she had actually worked as a Title I math teacher from August 2000 to January 2005, and then from August 2005 until June 2006. Tr. 176, 199. Plaintiff earned her master's degree in 2000. Tr. 35-36, 176. Moreover, as the DOT explains, "[s]pecific vocational training includes training given in any of the following circumstances: a. vocational education (high school . . . and that part of college training which is organized around a specific vocational objective)." *See* DOT (app'x C), 1991 WL 688702. Thus, even assuming Plaintiff did not start working until 2002, the ALJ properly considered that Plaintiff met the SVP 7 level by working three-and-a-half school years (well beyond the minimum two years of experience mentioned in the DOT) and having a master's degree, as well as experience in substitute teaching. Tr. 35-36, 176, 199. In any event, it was Plaintiff's burden to establish that she could not perform her past relevant work as an elementary school teacher, which she failed to do. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (holding plaintiff has burden to show inability to perform past relevant work as actually or generally performed).

For all these reasons, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole. Therefore, the Court finds no error. The Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). Thus, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE